WITNESSES:

BORROWER:

THREE AMIGOS LAND CO., LLC, a South Carolina limited liability company

By: _____

Its: _____ MEMBER _____

GUARANTORS:

_____
GEORGE M. LEE, III

_____
WILLIAM J. DEGENHART

_____
PAUL V. DEGENHART

LENDER:

FIRST SAVERS BANK

By: _____

Its: _____ S VP _____

31

EXHIBIT "A"

## LEGAL DESCRIPTION OF PROPERTY

### (Lot 22 and Tract C)

Lot 22 and Tract C, as shown on the Plat of River City Marketplace according to the plat thereof as recorded in Plat Book 60, Pages 30 through 42 of the Public Records of Duval County, Florida.

**EXHIBIT "B"**
Development Costs Analysis

WCSR 3501184v2

## GUARANTY AGREEMENT

GUARANTOR:      **WILLIAM J. DEGENHART**

BORROWER:      **THREE AMIGOS LAND CO., LLC**

**THIS GUARANTY AGREEMENT** is made and granted by the undersigned **WILLIAM J. DEGENHART** (the "Guarantor"), whose address is 4720 Waters Avenue, Savannah, GA 31404, in order to induce **FIRST SAVERS BANK** (the "Lender"), whose address is 501 Roper Mountain Road, Greenville, South Carolina 29615, to extend certain credit to or for the benefit of **THREE AMIGOS LAND CO., LLC**, a South Carolina limited liability company (the "Borrower"), and is given in consideration of the benefits flowing to the Guarantor therefrom (which the Guarantor hereby acknowledges and agrees constitute fair and adequate consideration for this Guaranty). In consideration of the foregoing, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby covenants and agrees as follows:

1)      <u>GUARANTY OF OBLIGATIONS</u>. Subject to the Limitations on Guaranty set forth hereinafter, the Guarantor irrevocably, unconditionally and absolutely *guarantees* to the Lender, its successors and assigns, the punctual payment and performance as and when due of the following-described indebtedness, liabilities, obligations and duties (collectively, the "Obligations"):

(a)      All monies now or hereafter owed to the Lender that are evidenced by that certain Promissory Note from the Borrower to the Lender of even date in the original maximum principal sum of One Million Eight Hundred Thousand and No/100 ($1,800,000.00) Dollars (the "Note"), including without limitation, all principal, interest, late charges, prepayment charges, other charges, attorneys' fees, costs and expenses whatsoever actually incurred, becoming due to the Lender pursuant to the Note and any renewals, extensions, modifications and rearrangements of, and any and all substitutes and replacements for, the Note and any other indebtedness, liabilities, duties and obligations whatsoever now or hereafter evidenced by or pursuant to the Note, whether direct, indirect or contingent.

(b)      All performance under and/or compliance with all terms, conditions, covenants, representations, warranties and provisions set forth in the Note and all Loan Documents (as defined in the Note) to be performed by or complied with on the part of the Borrower or any other guarantors thereof or parties thereunder, including without limitation, any renewals, extensions, modifications and rearrangements of, and any and all substitutes and replacements for any of the foregoing.

(c)      All installation and construction through completion of all Improvements (as defined in the Loan Agreement) to be installed and constructed upon the Property (as defined in the Loan Agreement) pursuant to and in compliance with the Construction Documents and all applicable Governmental Requirements (as said terms are defined in the Loan Agreement).

WCSR 3499457v2

(d)     All costs or expenses incurred, or advances made, by Lender, including without limitation court costs and attorneys fees actually incurred, to preserve the priority, validity or amount of any collateral now or hereafter existing as security for the Note.

(e)     All monies now or hereafter owed to the Lender pursuant to and all performance under and/or compliance with this Guaranty, and the terms, provisions, covenants and warranties contained herein, and any renewals, extensions, modifications and rearrangements of, and any and all substitutes for, this Guaranty including without limitation all costs, expenses and attorneys fees actually incurred by the Lender in the enforcement of this Guaranty and the preservation of the Lender's rights hereunder.

2)     NATURE OF GUARANTY. This Guaranty constitutes an irrevocable, unconditional, absolute, present and continuing guaranty of payment and performance and not a guaranty of collection. The Guarantor, without limitation on its obligations hereunder, agrees that it is liable for payment of the Obligations as a primary obligor of the Borrower. The obligations of the Guarantor hereunder shall not be subject to any counterclaim, setoff, deduction or other defense existing or claimed now or hereafter by or on behalf of the Borrower, any other guarantor of the Note or any other person or entity whomsoever, whether such setoff, counterclaim, deduction or defense arises in connection with the Obligations, the transactions creating the Obligations, or otherwise, nor, except as otherwise expressly provided herein, shall this Guaranty be reduced, released, discharged, diminished, impaired, or adversely affected, in whole or in part, by any of the foregoing. The Guarantor may not revoke this Guaranty and this Guaranty shall remain in full force and effect after any attempted revocation by the Guarantor, and shall remain in full force and effect until all of the Obligations shall have been paid, performed and satisfied in full.

3)     CONSENTS. The Guarantor consents to and agrees that its Obligations hereunder shall not, except as otherwise expressly stated herein, be released, discharged, impaired, diminished, reduced, or otherwise affected by any act, event, happening, occurrence, circumstance, condition, matter or thing whatsoever, including without limitation all such items as are set forth hereinafter (whether occurring before, during or after the occurrence of any event of default under the Note or any Loan Document, and whether or not the Guarantor shall have any knowledge or notice thereof or have given its consent thereto), and further waives any and all rights (including without limitation rights to notice) which the Guarantor might otherwise have arising out of or as a result of, any of the following:

(a)     All renewals, extensions, continuations, modifications, supplements, amendments, exchanges, alterations, rearrangements, waivers, compromise, termination, release or surrender of any or all of the Obligations, any or all of the Loan Documents, and any or all written agreements pertaining to all or any part of the Obligations, whether in whole or in part;

(b)     All adjustments, indulgences, postponements, forbearances and compromises granted or given by the Lender to the Borrower or any other person;

2

(c)     The death, insolvency, bankruptcy, liquidation, disability, reorganization, dissolution or lack of power of any person, including, without limitation, the Borrower and the Guarantor; and any sale, lease or transfer of any or all of the assets of any person including, without limitation, the Borrower and the Guarantor;

(d)     The invalidity, illegality or unenforceability of all or any part of the Obligations, or any one or more agreements connected therewith, for the following reasons: (1) the Obligations, or any part thereof, may exceed the amount permitted by law, (2) the act of creating the Obligations or any part thereof may be ultra vires, (3) the officers, partners, members, managers, or representatives executing the Note or other documents evidencing or pertaining to the Obligations or any part thereof acted in excess of their authority, (4) the Obligations or any part thereof may violate applicable usury law, (5) the Borrower may have valid defenses, claims or offsets (whether at law, in equity or by agreement) which may render the Obligations or any part thereof wholly or partially unenforceable or uncollectible from the Borrower, (6) the creation, performance or repayment of the Obligations (or the execution, delivery and performance of any one or more agreements connected with the Obligations) may be uncollectible, legally impossible or unenforceable, or (7) any notes or other agreements pertaining to the Obligations or any part thereof may have been forged by the Borrower or the Guarantor.

(e)     Any full or partial release of the Borrower or any other persons, from liability for payment or performance of the Obligations or any part thereof;

(f)     The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for any of the Obligations;

(g)     .Any release, surrender, exchange, subordination, disposition, deterioration, waste, loss or impairment (including, without limitation, negligent, willful, unreasonable or unjustifiable impairment, unless due to willful acts or gross negligence of the Lender) of any collateral, property or security, at any time existing in connection with, or securing payment of, any of the Obligations;

(h)     Failure by the Lender or any other person to exercise diligence, commercial reasonableness or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security;

(i)     The Lender's failure to obtain or perfect any security interest, lien or other guaranty agreement;

(j)     The determination or adjudication that any payment on any of the Obligations constitutes a preference under bankruptcy laws, or the requirement for any reason that the Lender must refund or relinquish such payment;

(k)     Any lack of disclosure to the Guarantor of any information;

3

(1)     Any sale, assignment, transfer, endorsement or granting of any interest, in whole or in part, by the Lender of the Note or any of the Loan Documents;

(m)     Any failure of consideration or failure of the Guarantor to receive or realize any or all of the benefits expected or contemplated by virtue of this Guaranty; and

(n)     Any other action or omission with respect to all or any part of the Obligations, or the security and collateral therefor, whether or not such action or omission prejudices the Guarantor or increases the likelihood that the Guarantor will be required to pay all or any part of the Obligations; it being the unambiguous and unequivocal intention of the Guarantor that the Guarantor be obligated to pay and perform the Obligations if the Obligations are not punctually paid and performed when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether or not contemplated, and whether or not specifically described herein.

Notwithstanding the foregoing, the Guarantor does not waive or release (expressly or impliedly) any rights of subrogation, reimbursement or contribution which it may have, after payment in full of the Obligations, against others liable on the Obligations; provided, that the Guarantor's rights of subrogation and reimbursement shall be, and at all times remain subordinate to Lender's rights and claims.

4)     WAIVERS. The Guarantor hereby absolutely, unconditionally and irrevocably waives, to the fullest extent permitted by law, the following:

(a)     Any requirement that prior to making demand for payment or seeking to enforce any right or remedy under this Guaranty, the Lender first make demand upon, make claim against or take any action with respect to the Borrower or any other persons, or resort to or seek to exhaust any collateral, or seek to enforce any other right or remedy in any of the Loan Documents or resort to any other means available by law or in equity for obtaining payment of the Obligations;

(b)     Diligence, presentment, demand, protest, notice of acceptance, notice of dishonor, notice of protest and any other notice of any other kind;

(c)     Any right of subrogation to any right of the Borrower and any other right to reimbursement, indemnity or other recourse against the Borrower or any other person;

(d)     Any right or benefit (whether directly or through the Borrower or any other persons) under any appraisement, valuation, stay, extension or redemption laws; and

(e)     Any right to require marshalling of any collateral.

5)     SUBORDINATION OF GUARANTOR CLAIMS. Until the Obligations are paid in full and the Guarantor's liability hereunder has been released and discharged, the Guarantor

4

covenants and agrees that it shall not claim, seek, sue for, receive or collect, directly or indirectly, from the Borrower or any other person any other material obligations, indebtedness, liabilities or duties owed or claimed to be owed by the Borrower or such other person to the Guarantor (the "Guarantor Claims"), including without limitation all rights and claims of the Guarantor against the Borrower or such person arising by way of subrogation or otherwise, whether direct or indirect, primary or secondary, joint, several or joint and several, fixed or contingent, whether acquired by the Guarantor in a transaction with the Borrower or in a transaction with one or more other persons, whether originally owed to the Guarantor or owed to other persons, whether resulting from the Guarantor's payment of all or any part of the Obligations, and whether arising in connection with or evidenced by notes, advances, bookkeeping entries, guaranty agreements, liens, security interest agreements, or any other method or means, and whether evidenced by liens, security interests, or other encumbrances of any nature, all of which Guarantor Claims shall be inferior and subordinate to all liens, security interests and other encumbrances upon the assets of the Borrower or such other person which shall secure the payment of the obligations, regardless of whether such encumbrances arise in favor of the Guarantor or the Lender and whether presently existing and hereafter arising. The Guarantor covenants and agrees that it shall not exercise and enforce any creditor's rights it may have against the Borrower or such other party, or foreclose or repossess, claim, or otherwise take steps or institute any actions or proceedings (judicial or otherwise, including without limitation, the commencement of or joinder in any liquidation, bankruptcy, rearrangement, debtors relief or other insolvency proceeding) to enforce any liens, security interests or other encumbrances on any of the assets of the Borrower or such other person so long as the Obligations remain outstanding. The Guarantor further covenants and agrees that the Lender may prove its claim for outstanding Obligations in any receivership, bankruptcy, reorganization, rearrangement, debtors relief or other insolvency proceeding in which the Borrower or such other party is a debtor so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian, dividends and payments which would otherwise be payable upon Guarantor Claims, and in this connection the Guarantor hereby assigns to the extent of the outstanding Obligations such dividends and payments to the Lender and agrees that, with respect to the remainder of the Guarantor Claims, the Guarantor's rights shall be subordinate to the Lender's rights and claims. If the Lender receives, for application upon the Obligations, any such dividends or payments which, as between the Borrower and the Guarantor, constitute payments on the Guarantor Claims, then upon full payment of the Obligations to the Lender, the Guarantor shall be subrogated to the rights of the Lender to the extent that payments to the Lender on the Guarantor Claims have contributed to satisfaction of the Obligations; and such subrogation shall be in respect to that portion of the Obligations which would have been unpaid if the Lender had not received dividends or payments upon the Guarantor Claims.

6)   <u>REPRESENTATIONS AND WARRANTIES</u>. The Guarantor hereby represents and warrants to the Lender that:

(a)   As of the execution hereof, nothing exists to impair the effectiveness of this Guaranty or its immediate and continuing effectiveness;

(b)   The Guarantor has received, or will receive, direct or indirect benefit and fair consideration in making this Guaranty;

5

(c)     To the extent desired by the Guarantor, the Guarantor is familiar with the books and records regarding the Borrower's financial condition and the value of all collateral intended as security for payment of any of the Obligations; however, the Guarantor is not relying on such financial condition or collateral in making this Guaranty;

(d)     No person has made any representation, warranty or statement to the Guarantor to induce the Guarantor to make this Guaranty;

(e)     This Guaranty is the legal and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms.

7)     <u>EFFECT OF BANKRUPTCY</u>. If, pursuant to any bankruptcy, insolvency or other debtor relief, laws or rules, or any judgment or order or decision thereunder, any payment received by the Lender shall be adjudicated as a voidable preference or the Lender must otherwise rescind or restore any amount taken, credited or received by the Lender in payment or satisfaction by any of the Obligations, any prior release or discharge by the terms of this Guaranty given by the Lender shall be without effect and this Guaranty shall remain in full force and effect. The Guarantor's Obligations hereunder shall not be discharged except by the Guarantor's performance of those Obligations and then only to the extent of such performance.

8)     <u>DEFAULT</u>. The term "Event of Default", whenever used hereinafter, shall mean any one or more of the following events:

(a)     Occurrence of an Event of Default set forth or defined in the Note or in any of the Loan Documents, including a breach of any of the terms or conditions of this Guaranty, which is not cured within any applicable grace period, if any, set forth herein or therein;

(b)     Subject to the Borrower's ability to produce a replacement guarantor acceptable to the Lender in its sole discretion within the applicable cure period, the entry of any judgment against the Guarantor or the attachment, levy or garnishment against any property of the Guarantor which in the sole judgment of the Lender would materially and adversely affect the Guarantor's ability to perform its Obligations under this Guaranty and which remains unsatisfied for a period of sixty (60) days after the filing or issuance of the same, or the occurrence of any other substantial change in the financial condition of the Guarantor which, in the reasonable judgment of the Lender, is materially adverse, unless in either event a substitute guarantor satisfactory to the Lender is offered to the Lender;

(c)     Except as permitted in the Loan Documents, any transfer, sale, conveyance, disposition or assignment of the ownership interest or management rights of the current shareholders of the Guarantor, whether voluntary, involuntary, or by operation of law, without the express prior written consent of the Lender; and

6

(d)     The death of the Guarantor, unless the Borrower shall produce and deliver to the Lender an acceptable substitute guarantor within the applicable cure period.

9)     REMEDIES. Upon occurrence of any Event of Default, the Lender may take any or all of the following actions without any requirement of demand for payment or performance on the part of the Borrower or any other persons whomsoever and without requirement of resort to any collateral for any of the Obligations or to any other means of obtaining payment or performance of any of the Obligations, as follows:

(a)     The Lender may declare all of the Obligations, regardless of their terms and including the Guarantor's Obligations hereunder, immediately due and payable and that performance thereof is immediately required;

(b)     The Lender may accelerate all or any part of the Obligations and require full payment and performance thereof by the Guarantor;

(c)     The Lender shall have the right of setoff against, a lien upon and a continuing security interest in all instruments, documents, securities, cash or other property, and all proceeds of the foregoing, which may now or hereafter be owned by the Guarantor which may become in possession or control of the Lender or any other party acting on the Lender's behalf, directly or indirectly, regardless of the capacity in which the Lender may receive, hold or control the same;

(d)     The Lender shall have all of the rights and remedies afforded to it under the Note and the Loan Documents or otherwise existing at law or in equity.

10)     NATURE OF REMEDIES. The remedies provided herein, in the Note, and in all other Loan Documents shall be cumulative and none is exclusive and such remedies shall be exercised concurrently or consecutively at the option of the Lender. Any waiver, failure, or delay by the Lender in exercising any remedy provided herein, in the Note or in any Loan Document upon occurrence of any Event of Default, shall not constitute a waiver of such right or remedy or preclude its future exercise or that of any other right of remedy in the event of any subsequent default, whether of the same or different nature. No notice to or demand on the Guarantor by the Lender shall be deemed to be a waiver of the Lender's right to take other or further action and in no event shall any waiver or right, power or remedy of the Lender hereunder be effective unless the same is in writing and signed by the Lender.

11)     SEVERABILITY. The invalidity, illegality or unenforceability of any provision of this Guaranty or in the Note or any of the Loan Documents shall not render invalid, illegal or unenforceable any other provision hereof.

12)     SURVIVAL. All covenants, agreement, representations, and warranties of the Guarantor contained herein and in any document or item delivered pursuant hereto shall survive the execution hereof and continue and remain in full force and effect until the Obligations have been paid, performed and satisfied in full.

7

13)   ENTIRE AGREEMENT. This Guaranty contains the entire agreement and understanding between the Guarantor and the Lender with respect to the subject matter hereof, and supersedes all prior agreements and understandings, whether oral or written.

14)   GOVERNING LAW. This Guaranty shall be governed and construed in accordance with the internal laws of the State of South Carolina, without regard to any choice of law or conflict of law provisions which might apply the law of another jurisdiction.

15)   CONSENT TO JURISDICTION. The Guarantor, by its execution hereof, agrees that any action or proceeding which the Lender may initiate with respect to this Guaranty shall, at the Lender's sole option, be brought in and subject to the jurisdiction of any state or federal court of competent jurisdiction of the State of South Carolina or the State of Florida, to which jurisdictions the Guarantor, by its execution hereof, hereby irrevocably consents. Notwithstanding the foregoing, however, the Guarantor additionally acknowledges and agrees that the Lender may initiate any action upon or for the enforcement of this Guaranty in conjunction with or as a part of any action which the Lender shall initiate upon or for the enforcement of the Mortgage, Security Agreement, and Fixture Financing Statement from the Borrower to the Lender. The Guarantor irrevocably waives any objection, including without limitation any objection to the laying of venue based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any such action or proceeding in either such jurisdiction. Nothing herein shall affect the right of the Lender to serve process in any manner permitted by law nor shall limit the right of the Lender to bring proceedings against another party to any of the Loan Documents in the courts of any other jurisdiction.

16)   NOTICE. All notices made or required hereunder shall be in writing. The Effective Date of Notice shall be the date upon which such notice shall have been personally delivered (including personal delivery by Federal Express or other nationally recognized overnight private courier service) or the date of postmark when deposited in the United States Mail, registered or certified, postage prepaid, return receipt requested, addressed in any such event, to the Lender or the Guarantor at the address set forth hereinafter, or at such other addresses as may hereafter be designated in writing.

17)   LIMITATIONS ON GUARANTY. Notwithstanding anything contained in this Guaranty or in any other Loan Document to the contrary, the liability of the Guarantor hereunder shall be limited to the principal sum of Four Hundred Fifty Thousand and no/100 ($450,000.00) Dollars, plus any and all outstanding unpaid interest due to the Lender under the Note, plus any loss, liability or damage to or sustained by the Lender arising at any time during the pendency of this Guaranty from the following:

(a)   any fraudulent or material misrepresentation by the Borrower or the Guarantor in connection with the execution, delivery, contents, or performance of the Loan Documents;

(b)   the misappropriation by the Borrower or the Guarantor of any insurance or condemnation proceeds attributable to any such collateral;

8

(c)     the misappropriation by the Borrower or the Guarantor of any rentals assigned to the Lender following written notification by the Lender to the Borrower of the occurrence of an Event of Default under the Loan Documents;

(d)     the intentional violation by the Borrower or the Guarantor of any representations, covenants or agreements contained in the Loan Documents with respect to environmental matters;

(e)     the violation by the Borrower, following the occurrence of an Event of Default, of any indemnification obligations contained in the Loan Documents which arise out of any matters enumerated in subsections (a) through (f) of this paragraph;

(f)     the violation by the Borrower, following the occurrence of an Event of Default, of any prohibitions contained in the Loan Documents against transfer of the Borrower's property identified in the Note, or of any interests in the Borrower; and

(g)     all court costs and reasonable attorneys' fees incurred by the Lender in connection with any claims asserted by or against the Lender on account of this Guaranty.

Executed as of the ___20___ day of December, 2006

Witnesses:

WILLIAM J. DEGENHART

9

WCSR 3499457v2



**FIRST SAVERS BANK**
A Division of
Plantation Federal Bank

January 2, 2009

Three Amigos Land Co., LLC
c/o George Lee
Professional Realty Inc.
8910 Two Notch Rd. Ste. 302
Columbia, SC 29223

RE:  $1.8MM Development Loan Modification

Dear Gentlemen:

This Letter represents a modification of your original Commitment Letter dated December 1, 2006.

All terms & conditions will remain the same except the following:

  1) Loan Term change from December 10, 2008 Maturity Date to April 2, 2009 Maturity Date.
  2) Interest rate change from LIBOR + 2.50% to WSJ Prime + 1% with 5.50% Floor.

Upon reaching the new maturity date of April 2, 2009, borrower may be subject to additional changes in loan terms in order to further renew a loan agreement with the Bank.

This correspondence and all documents related to this loan commitment are privileged information between First Savers Bank and the recipient only.  Please contact me directly with any questions or concerns.

Sincerely,

Jeff McGehee
Vice President
Commercial Real Estate Lending
First Savers Bank
*A Division of Plantation Federal Bank*

Each of the undersigned hereby accepts the Modification to the Loan Commitment set forth above, subject to the terms and conditions set forth therein, this _____ day of January, 2009.

AS BORROWER(S)/GUARANTOR(S) FOR *Three Amigos Land Co., LLC*

By:_____
    Mr. George M. Lee, III, Member

By:_____
    Mr. William J. Degenhart, Member

By:_____
    Mr. Paul V. Degenhart, Member

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 101 | Three Amigos Land Co LLC | 8800010884 | 01/02/09 | JJM |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $1,800,000.00 | Wall Street Journal Prime plus 1.000% | 5.500% | 04/02/09 | Commercial |

Creditor Use Only

# PROMISSORY NOTE
(Commercial - Draw)
**RENEWAL NOTE**
State of Florida's Documentary Stamp is not required on this Note.

**DATE AND PARTIES.** The date of this Promissory Note (Note) is January 2, 2009. The parties and their addresses are:

LENDER:
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
935 South Main Street, Suite 300
Greenville, SC 29601
Telephone: (864) 477-2560

BORROWER:
THREE AMIGOS LAND CO LLC
a South Carolina Limited Liability Company
8910 Two Notch Rd. Ste 302
Columbia, SC 29223

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

2. **RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 22, 2008 | # 8800010884 - 101 | $1,800,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $1,753,019.48.

3. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $1,800,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

All advances made will be made subject to all other terms and conditions of the Loan.

4. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 5.500 percent (Interest Rate) until January 3, 2009, after which time it may change as described in the Variable Rate subsection.

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the South Carolina usury laws under S.C. Code Ann. §§ 37-3-605, 37-3-105 and 37-10-101 et. seq.

D. **Accrual.** Interest accrues using an Actual/360 days counting method.

E. **Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change January 3, 2009 and daily thereafter.

Three Amigos Land Co LLC
South Carolina Promissory Note
SC/4Xdbailey00084600005243021123108N

©1998 Bankers Systems, Inc., St. Cloud, MN Exßert\[t\]

Page 1

(3) Calculation Of Change.  On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent.  The result of this calculation will be rounded to the nearest .001 percent.  Subject to any limitations, this will be the Interest Rate until the next Change Date.  The new Interest Rate will become effective on each Change Date.  The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) Limitations.  The Interest Rate changes are subject to the following limitations:

(a) Lifetime.  The Interest Rate will never be less than 5.500 percent.

(5) Effect Of Variable Rate.  A change in the Interest Rate will have the following effect on the payments:  The amount of scheduled payments and the amount of the final payment will change.

**5. REMEDIAL CHARGES.**  In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment.  Additional remedial charges may be described elsewhere in this Note.

A. Late Charge.  If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment.  I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.**  This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented.  The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated.  When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.**  I agree to pay this Note in installments of accrued interest beginning February 2, 2009, and then on the 2nd day of each month thereafter.  I agree to pay the entire unpaid Principal and any accrued but unpaid interest on April 2, 2009.

Payments will be rounded to the nearest $.01.  With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf.  Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest.  If you and I agree to a different application of payments, we will describe our agreement on this Note.  You may change how payments are applied in your sole discretion without notice to me.  The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.**  I may prepay this Loan in full or in part at any time.  Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.**  This is a business-purpose loan transaction.

**10. SECURITY.**  The Loan is secured by previously executed, separate security instruments described as follows:

| Description | Date |
| --- | --- |
| Mortgage, Security Agreement and Fixture Financing Statement, UCC-1, Assignment of Contracts Contract Rights Leases Rents and Profits. | December 22, 2006 |

**11. DUE ON SALE OR ENCUMBRANCE.**  You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property.  This right is subject to the restrictions imposed by federal law 112 C.F.R. 591], as applicable.

**12. WAIVERS AND CONSENT.**  To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower.  In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

B. No Waiver By Lender.  Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. COMMISSIONS.**  I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**14. APPLICABLE LAW.**  This Note is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.**  My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it.  You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan.  Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan.  This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.**  This Note may not be amended or modified by oral agreement.  No amendment or modification of this Note is effective unless made in writing and executed by you and me.  This Note and the other Loan Documents are the complete and final expression of the agreement.  If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**22. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**23. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

Three Amigos Land Co LLC

By _____ (Seal)
George M Lee III, Member

By _____ (Seal)
William A Degenhart, Member

By _____ (Seal)
Paul V Degenhart, Member

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 101 | Three Amigos Land Co LLC | 8800010884 | 01/02/09 | JJM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $1,800,000.00 | Wall Street Journal Prime plus 1.000% | 5.500% | 04/02/09 | Commercial |
| | | Creditor Use Only | | |

# COMMERCIAL LOAN AGREEMENT
Draw Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is January 2, 2009. The parties and their addresses are as follows:

LENDER:
 PLANTATION FEDERAL BANK
 AS SUCCESSOR TO FIRST SAVERS BANK
 935 South Main Street, Suite 300
 Greenville, SC 29601

BORROWER:
 THREE AMIGOS LAND CO LLC
 a South Carolina Limited Liability Company
 8910 Two Notch Rd. Ste 302
 Columbia, SC 29223

**1. DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

**A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

**B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

**C. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually or together. "You" and "your" refers to the Loan's lender.

**F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**2. ADVANCES.** Advances under this Agreement are made according to the following terms and conditions.

**A. Multiple Advances.** In accordance with the terms of this Agreement and other Loan Documents, you will provide me with a draw note and the maximum total principal balance will not exceed $1,800,000.00 (Principal).

**B. Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

 (1) I make a request in person.

 (2) I make a request by phone.

**C. Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

 (1) Discretionary Advances. You will make all Loan advances at your sole discretion.

 (2) Advance Amount. Subject to the terms and conditions contained in this Agreement, advances will be made in exactly the amount I request.

 (3) Disbursement of Advances. On my fulfillment of this Agreement's terms and conditions, you will disburse the advance in any manner as you and I agree.

 (4) Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any over advances in addition to my regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

 (5) Records. Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**D. Conditions.** I will satisfy all of the following conditions before you either issue any promissory notes or make any advances under this Agreement.

 (1) No Default. There has not been a default under this Agreement or any other Loan Documents nor would a default result from making the Loan or any advance

 (2) Information. You have received all documents, information, certifications and warranties as you may require, all properly executed, if appropriate, on forms acceptable to you. This includes, but is not limited to, the documents and other items listed in the Loan Checklist Report which is hereby incorporated by reference into this Agreement.

 (3) Inspections. You have made all inspections that you consider necessary and are satisfied with this inspection.

(4) Conditions and Covenants  I will have performed and complied with all conditions required for an advance and all covenants in this Agreement and any other Loan Documents.

(5) Warranties and Representations.  The warranties and representations contained in this Agreement are true and correct at the time of making the requested advance.

(6) Financial Statements.  My most recent financial statements and other financial reports, delivered to you, are current, complete, true and accurate in all material respects and fairly represent my financial condition.

(7) Bankruptcy Proceedings.  No proceeding under the United States Bankruptcy Code has been commenced by or against me or any of my affiliates.

**3. MATURITY DATE.** I agree to fully repay the Loan by April 2, 2009.

**4. EXTENSION.** The Loan may be extended for  periods, subject to the following conditions.

   A. **In Compliance.** No default exists under this Agreement or the other Loan Documents.

   B. **Interest Rate Adjusted.** You and I agree in writing on the extension period's interest rate.

**5. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Loan is in effect, except when this Agreement provides otherwise.

   A. **Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

   B. **Authority.** The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

   C. **Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

   D. **Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.

   E. **Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

   F. **Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

   G. **Loan Purpose.** This is a business-purpose loan transaction.

   H. **No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

   I. **Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

   J. **Legal Dispute.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

   K. **Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

   L. **Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

   M. **Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**6. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

   A. **Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared.

   B. **Frequency.** Annually, I will provide to you my financial statements, tax returns, annual internal audit reports or those prepared by independent accountants as soon as available or at least within  days after the close of each of my fiscal years. Any annual financial statements that I provide you will be prepared statements.

   C. **Rent Roll and Vacancy Analysis Report.** I will provide you with an annual report concerning my rental real estate property, listing for each month: my current tenants, the square footage each tenant rented, the rent each paid and each lease's expiration date as well as the square footage that remained vacant.

   D. **SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within  days after issuance.

   E. **Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within  days after your request.

   F. **Additional Financial Statements Term.**  Financial Information:  Until the loan is repaid in full, Borrower and each Guarantor will be obligated on a continuing basis to provide Bank with such financial information concerning the Borrower and each Guarantor as the Bank may request from time to time.

Within  120 days following the Borrowers fiscal year end, Borrower will deliver to Bank its Annual Tax Returns prepared according to generally accepted accounting principles.

Each Guarantor will provide a verified personal financial statement and Annual Tax Returns to Bank annually.

Borrower and each Guarantor will immediately inform Bank of any material change in the condition, financial or otherwise of the Borrower or either Guarantor and of any actual or threatened litigation which might substantially affect the condition, financial or otherwise, of Borrower or either Guarantor.

In addition to submitting financial statements to Bank, an authorized officer of Borrower will certify continuing compliance with all representations, warranties, and covenants contained herein and will also certify that there is no violation or default with any other agreement or contract.

**7. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating in or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following:

(1) You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

(2) You may discuss my affairs, finances and business with any one who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

(3) You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a domestication, conversion or interest exchange.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal with, any insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

**O. No Default under Other Agreements.** I will not allow to occur, or to continue unremedied, any act, event or condition which constitutes a default , or which, with the passage of time or giving of notice, or both, would constitute a default under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

---

R. **No Change in Capital.** I will not release, redeem, retire, purchase or otherwise acquire, directly or indirectly, any of my capital stock or other equity security or partnership interest, or make any change in my capital structure, except to the extent required by any agreements signed prior to this Agreement and disclosed to you or with your prior written consent.

S. **Loan Obligations.** I will make full and timely payment of all principal and interest obligations, and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents.

T. **Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee or lender loss payee endorsement for you when these endorsements are available. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

U. **Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

V. **Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

W. **Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

X. **Deposit Accounts.** I will maintain substantially all of my demand deposit/operating accounts with you.

Y. **Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and Loan Documents.

8. **INSURANCE.**

A. **Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

9. **DEFAULT.** I will be in default if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

C. **Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

N. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

10. **REMEDIES.** After I default, you may at your option do any one or more of the following:

A. **Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

E. **Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off

Three Amigos Land Co LLC
South Carolina Commercial Loan Agreement
SC/4Xdbailey0008460000624302101230 9Y

Page 4

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. APPLICABLE LAW.** This Agreement is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**13. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**14. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**15. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**16. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**17. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Agreement and the other Loan Documents, and proposed loans or extensions of credit that relate to this Agreement. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Agreement, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Agreement or another writing.

**18. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**19. SIGNATURES.** By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

Three Amigos Land Co LLC

By _____ (Seal)
George M Jr. Member

By _____ (Seal)
William D Degenhart, Member

By _____ (Seal)
Paul V Degenhart, Member

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 101 | Three Amigos Land Co LLC | 8800010884 | 05/11/09 | JJM |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $1,800,000.00 | Wall Street Journal Prime plus 1.000% | 5.500% | 08/11/09 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial - Draw)
**RENEWAL NOTE**

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 11, 2009. The parties and their addresses are:

**LENDER:**
PLANTATION FEDERAL BANK
AS SUCCESSOR TO FIRST SAVERS BANK
935 South Main Street, Suite 300
Greenville, SC 29601
Telephone: (864) 477-2560

**BORROWER:**
THREE AMIGOS LAND CO LLC
a South Carolina Limited Liability Company
8910 Two Notch Rd, Ste 302
Columbia, SC 29223

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 22, 2006 | # 8800010884 - 101 | $1,800,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $1,773,568.26.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $1,800,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

All advances made will be made subject to all other terms and conditions of this Loan.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 5.500 percent (Interest Rate) until May 12, 2009, after which time it may change as described in the Variable Rate subsection.

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the South Carolina usury laws under S.C. Code Ann. §§ 37-3-605, 37-3-105 and 37-10-101 et. seq.

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change May 12, 2009 and daily thereafter.

(3) **Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent. The result of this calculation will be rounded to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Limitations.** The Interest Rate changes are subject to the following limitations:

(a) **Lifetime.** The Interest Rate will never be less than 5.500 percent.

(5) **Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Loan in installments of accrued interest beginning June 11, 2009, and then on the 11th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on August 11, 2009.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** This is a business-purpose loan transaction.

**10. SECURITY.** The Loan is secured by previously executed, separate security instruments described as follows:

| Description | Date |
|---|---|
| Mortgage, Security Agreement and Fixture Financing Statement, UCC-1, Assignment of Contracts Contract Rights Leases Rents and Profits. | December 22, 2006 |

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**14. APPLICABLE LAW.** This Note is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

20. ERRORS AND OMISSIONS. I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

21. AGREEMENT TO ARBITRATE. You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

22. WAIVER OF TRIAL FOR ARBITRATION. You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

23. SIGNATURES. By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.


BORROWER:

Three Amigos Land Co LLC

By _____ (Seal)
George M Lee III, Member

By _____ (Seal)
William J Degenhart, Member

By _____ (Seal)
Paul V Degenhart, Member

No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and any other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**22. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**23. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.


BORROWER:

Three Amigos Land Co LLC

By_____ (Seal)
George M Lee III, Member

By_____ (Seal)
William J Degenhart, Member

By_____ (Seal)
Paul V Degenhart, Member

# GUARANTY
(Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is September 23, 2009. The parties and their addresses are:

LENDER:
> **PLANTATION FEDERAL BANK**
> **AS SUCCESSOR TO FIRST SAVERS BANK**
> 935 South Main Street, Suite 300
> Greenville, SC 29801
> Telephone: (864) 477-2560

BORROWER:
> **THREE AMIGOS LAND CO LLC**
> a South Carolina Limited Liability Company
> 8910 Two Notch Rd. Ste 302
> Columbia, SC 29223

GUARANTOR:
> **WILLIAM J DEGENHART**
> 440-A Moon River Ct.
> Savannah, GA 31406

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

**B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

**C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce your forbearance with respect to any Debt, or to induce you to extend and/or maintain credit, or grant any other financial accommodation, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 101, dated September 23, 2009, from Three Amigos Land Co LLC (Borrower) to you, in the amount of $1,650,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**A. Future Advances.** I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims for you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive

possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. **No Waiver by Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. **Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. **Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

E. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

---

F. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and that I have signed this Guaranty to induce you to forbear from exercising your remedies against the Borrower, extend credit to the Borrower, maintain the Borrower's credit, or grant any other financial accommodation. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from the continued existence of the Debt guarantied hereby, and from any loan and/or financial accommodations resulting in the creation of other Debt guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of South Carolina, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt, and any proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

**21. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**22. SIGNATURES.** By signing under seal, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_____  (Seal)
William J Degenhart
Individually